Filed 9/20/13  P. v. DiMaio CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047319 |
| v. | (Super. Ct. No. 10HF2298) |
| JAMES VINCENT DıMAIO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Joy W. Markman, Judge.  Affirmed.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Randy Einhorn and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant James Vincent DiMaio was charged in a 16-count amended felony complaint with seven counts of grand theft (Pen. Code,[1] § 487, subd. (a)), five counts of diversion of construction funds (§ 484b; misdemeanors), and four counts of issuing an insufficient funds check (§ 476a, subd. (a)). He pled guilty to all the charges. The court placed him on five years of formal probation, ordered him to serve one year in the county jail, imposed a $200 restitution fine, and ordered him to pay restitution on a number of the counts in an amount directed by the probation department.[2] In connection with the grand theft and diversion of construction funds alleged in counts 15 and 16, respectively, the court conducted a restitution hearing. At the conclusion of the hearing, the court ordered defendant to reimburse Reyburn Landscaping $169,750. Defendant appeals, contending the court abused its discretion in making the restitution order.

I

FACTS

Stuart Reyburn, the previous owner of Reyburn Landscaping, testified at the restitution hearing. Defendant, who owned Just Palm Trees, supplied palm trees to Reyburn in the past. Reyburn had contact with defendant in December 2008, to January 2009, about supplying Reyburn with Canary Island palm trees for a job at M Casino in Las Vegas.[3] Reyburn testified he needed forty-three 17-foot to 25-foot Canary Island palms. Defendant said he could supply the trees within the needed timeframe. According to Reyburn, the approximate price was $8,500 per tree, delivered to Las Vegas.

---

[1] All statutory references are to the Penal Code.

[2] The parties eventually stipulated to the amount of restitution to be paid on counts 13 and 14.

[3] Reyburn also contracted with defendant to supply a number of Pindo palm trees. That portion of the job was not the subject of the restitution hearing.

Reyburn sent defendant an initial check of $13,000 made out to Just Palm Trees, and within a month sent defendant a wire transfer for $140,300. No trees had been delivered prior to the wire transfer. Reyburn subsequently sent defendant another wire transfer for $29,450. Reyburn said a few of the trees may have been delivered between the first and second wire transfers. According to Reyburn, defendant delivered 10 or 12 Canary Island palms and the customer rejected two of the trees. The money Reyburn paid defendant ($182,750) was approximately half of what Reyburn was to pay defendant to deliver the 43 trees needed for the job. Defendant did not deliver any Canary Island palms other than the 10 or 12 initially delivered.

Reyburn, telephoned defendant about the need for the additional trees. Reyburn said he was supposed to receive two to six a week. Defendant gave Reyburn "a lot of excuses as to why the palms weren't coming." Reyburn explained he was on a strict time schedule, defendant had not delivered more than 10 or 12 trees, and he had already paid defendant for more than 20 trees. Defendant said there were two palms trees on a truck outside of town, but they would not be delivered unless Reyburn had a check to pay the balance on the two trees. Reyburn said there would be no more checks until trees arrived at the job site and were accepted by the customer. Defendant stated the agreement was 50 percent down and the balance to be paid before the trees left the truck. Reyburn, who had lost confidence in defendant's ability to supply the trees, said he wanted to see the trees before paying defendant any more money. He offered to pay the balance on the delivered trees within three to five days. Defendant said that was unacceptable.

The two trees that were supposedly on a truck outside of Las Vegas never arrived at the job site. Reyburn attempted for several weeks to solve the problem. He asked where his trees were and defendant said it was out of his hands. He told Reyburn to call Kenny Clemens of Action Trees. Reyburn eventually asked defendant for his money back on trees that had not been delivered. Reyburn had to find another supplier to

furnish the remaining trees at an additional cost of $60,000 over and above what he and defendant had agreed.

Defense counsel showed Reyburn an unsigned October 27, 2008 invoice for 25 Canary Island palms at a price of $7,300 per tree. Reyburn said he recalls he needed more than 25 trees. He did not appear to take exception to the price per tree.

Defendant testified he was a palm tree broker; he locates trees for specific jobs. Canary Island palms are not farmed because they only grow six inches a year. The trees are sometimes found in back yards. An offer is made to the owner and, if accepted, the tree is then shipped to defendant's customer.

Defendant said he worked with Action Trees in connection with the M Casino job. He said the normal terms are 50 percent down and the supplier (Action Trees) would then be paid either by FedEx, wire transfer, or directly to the truck driver when the trees are delivered. Defendant receives the deposit and forwards it on to the supplier, absent a commission.

Defendant also produced an e-mail he wrote to Reyburn stating the Canary Island palms had been delivered and that he had 17 Pindo palms ready for shipment.[4] Defendant said that at one point Action Trees decided it did not want to continue shipping trees to Reyburn because they were not getting paid. He said the two trees on a truck just outside of Las Vegas were delivered when Action Trees received a check.

Defendant said the initial quote was for 43 trees, but Reyburn subsequently reduced that figure to 35 or 37. Defendant produced a signed August 21, 2008 invoice for 17 Canary Island palms at a price of $7,300 per tree, and an unsigned October 27, 2008 invoice for 25 Canary Island palms at the same price per tree.

According to defendant, all the Canary Island palms had been delivered by the date of the e-mail. Defendant said Action Trees not only delivered the requested

_____

[4] Reyburn denied the statement in the e-mail concerning delivery of the Canary Island palms was accurate.

4

Canary Island palms (35 to 37), an additional tree was delivered. He later said he paid Action Trees for all the trees and the question was whether Action Trees delivered them and was paid. On cross-examination, defendant conceded he could not say for sure whether the all the trees were delivered.

The court noted the testimony of defendant and Reyburn conflicted, but that Reyburn said he needed 43 trees, a figure defendant agreed with. The court found the agreed upon price for the trees was $7,300 per tree and that Reyburn received only 12 of the trees, two of which were damaged, and Reyburn had to turn to another supplier for the remainder of the trees. The court found nothing to support defendant's statement that all the trees were delivered. As a result, the court ordered defendant to pay restitution on counts 15 and 16 in the amount of $169,750. The court arrived at that figure by adding the amounts Reyburn paid defendant ($13,000 + $140,300 + $29,450) plus the $60,000 Reyburn had to pay to furnish the trees defendant failed to deliver, less $73,000 for the 10 undamaged trees that were delivered. The restitution amount of $169,750 was reduced to $158,500.46 based on a subsequent payment made by defendant.

II

DISCUSSION

Although defendant pled guilty to all the charges in this matter, his appeal does not challenge the validity of his guilty plea. Consequently, he was not required to obtain a certificate of probable cause in order to bring his appeal. (*People v. Kunitz* (2004) 122 Cal.App.4th 652, 657-658 [appeal of restitution fine imposed after guilty plea does not affect validity of guilty plea and no certificate of probable cause required].)

The California Constitution guarantees crime victims the right to obtain restitution from the person convicted of committing a crime resulting in a loss to the victim. (Cal. Const., art. I, § 28, subd. (b)(13).) Section 1202.4 sets forth items for the court to consider in setting the appropriate amount of restitution in a given case. (§ 1202.4, subd. (f).) "The statute further provides that the trial court 'shall order full

5

restitution unless it finds compelling and extraordinary reasons' not to do so [citation]; the restitution order must 'fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of [12 listed forms of loss]' [citation]." (*People v. Stanley* (2012) 54 Cal.4th 734, 737.) The victim bears the burden of proving the restitution amount by a preponderance of the evidence. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.)

We review a trial court's restitution order for an abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) When there is a rational and factual basis for the amount of restitution ordered, the court does not abuse its discretion. (*People v. Gemelli*, *supra*, 161 Cal.App.4th at p. 1542.) "To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*People v. Giordano*, *supra*, 42 Cal.4th at p. 664.) The superior court did just that here. As stated above, the court arrived at the restitution figure by adding the fees Reyburn paid defendant ($13,000 + $140,300 + $29,450) to the amount Reyburn had to pay another supplier to obtain the trees defendant failed to provide ($60,000) less $7,300 for each of the 10 trees defendant did provided ($73,000).

Defendant argues the superior court lacked an adequate factual basis for awarding restitution in this matter. We disagree.

The issue of how many trees were ordered and how many were delivered involved an old-fashioned swearing contest. We do not second-guess the trial court's determination of credibility (*People v. McDaniels* (1980) 107 Cal.App.3d 898, 903), as the credibility of witnesses is the "exclusive province" of the trier of fact—here the trial court (*People v. Lee* (2011) 51 Cal.4th 620, 632). The court found the parties agreed on a price of $7,300 per tree and that defendant delivered 10 acceptable trees. The agreed upon price of $7,300 a tree was supported by a signed invoice, and Reyburn testified

6

defendant delivered 12 of the trees, two of which were rejected. The sums paid to defendant for the trees was supported by Reyburn's testimony and documentary evidence. And the price Reyburn paid another supplier to furnish the trees defendant failed to deliver was supported by Reyburn's testimony, which the court clearly accepted. Accordingly, we find the amount of restitution ordered by the court was supported by the evidence and was not the result of an abuse of discretion.

III

DISPOSITION

The judgment is affirmed.

MOORE, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

BEDSWORTH, J.